# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| THOMAS THATCHER SCHEMKES, BRIAN MCKENNA, JAMES HAMMOND, AND GREGORY GREEN, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>　　　　　　　Plaintiffs,<br>　　vs.<br><br>PRESIDENTIAL LIMOUSINE, A NEVADA COMPANY; CLS NEVADA, LLC; A DELAWARE CORPORATION, DOING BUSINESS AS CLS TRANSPORTATION, LAS VEGAS; AND JACOB TRANSPORTATION SERVICES, LLC, A NEVADA COMPANY, DOING BUSINESS AS EXECUTIVE LAS VEGAS,<br><br>　　　　　　　Defendants.<br>AND RELATED COUNTER PARTIES. | Case No.: 2:09-cv-1100-GMN-PAL<br><br>**ORDER** |

Before the Court is Defendant/Counterclaimant Jacob Transportation Services, LLC's Motion to Dismiss Plaintiffs' case pursuant to Rule 37 or for Summary Judgment (ECF No. 128). Defendant CLS Nevada, LLC filed a Joinder to Jacob Transportation's motion (ECF No. 134). Plaintiffs/Counterdefendants filed a Response on July 2, 2010 (ECF No. 137) and Jacob Transportation filed a Reply on August 9, 2010 (ECF No. 149).

## **FACTS AND BACKGROUND**

Plaintiff/Counterdefendant, Thomas Thatcher Schemkes ("Schemkes"), brought this action against three limousine companies he had previously worked for in Las Vegas: Presidential Limousine ("Presidential"), CLS Transportation ("CLS") and Jacob Transportation Services ("Jacob Transportation"). Plaintiff was employed as a limousine

driver for Defendants as follows: (1) Presidential from February to July of 2007; (2) CLS from August of 2007 to June of 2008; and (3) Jacob Transportation from October of 2008, to the time when this action was filed. Schemkes accuses Defendants of failing to pay minimum wage and overtime compensation in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA").

Plaintiff filed his complaint on June 18, 2009 as a proposed FLSA collective action on behalf of other similarly situation persons who were employed as limousine drivers by Defendants. When Jacob Transportation filed its Answer, it asserted state law counterclaims against Plaintiff for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, intentional and negligent misrepresentation, trespass to land/conversion, and abuse of process. The Court dismissed the counterclaim for abuse of process but the remaining claims remain. (Order, ECF No. 105).

Schemkes filed a motion to amend and add additional parties, factual allegations and a legal claim for violation of FLSA and U.S. Department of Labor regulations for improper deductions from wages. (Motion to Amend, ECF No. 46). The Court granted Schemkes' motion and allowed Brian McKenna, James Hammond, and Gregory Greene to be added as Plaintiffs to the action. (Order, ECF No. 105). Plaintiff Brian McKenna ("McKenna") was employed as a limousine driver by Presidential from on or about January 2007 to May 2008. Plaintiff James Hammond ("Hammond") was employed as a limousine driver by CLS from on or about May 1997 to March 2008. Plaintiff Gregory Greene ("Greene") was employed as a limousine driver by Jacob Transportation from on or about August 2007 to January 2009. (Motion to Amend, ECF No. 46).

Plaintiffs claim they were paid on a commission based system. (*See* Amended Complaint, Ex. 1, ECF No. 46). Plaintiffs had a regularly scheduled shift each day and a fixed number of hours per shift. (*Id.*) They were required to be on-duty the entire scheduled

shift which was usually between eight to twelve hours. (*Id.*)  Defendants paid Plaintiffs a fixed dollar amount per trip.  Plaintiffs would also receive tips from customers. (*Id.*)  Sometimes, Plaintiffs would have slow days in which they averaged very few trips. (*Id.*)  Plaintiffs allege that in some circumstances this would mean that Plaintiffs did not earn enough money in a week to meet the minimum hourly wage as mandated by the FLSA. (*See* 29 U.S.C. § 206).

      Defendant/Counterclaimant Jacob Transportation alleges that Plaintiff/Counter-defendant Schemkes intentionally converted commissions or fares, intentionally inflated his work hours, and intentionally concealed monies and tips, giving rise to various claims for relief. (*See* Jacob Counterclaim, ECF No. 119).  The facts alleged regarding Schemkes' conduct support Jacob Transportation's counterclaims as well as their affirmative defenses.  Furthermore, the facts supporting these allegations are pertinent in determining both parties' damages.  Schemkes refused to answer certain questions concerning actual amounts he earned while working for Jacob Transportation at his deposition. (*See, e.g.*, Schemkes' Dep. pg. 308–09, ECF No. 128).  Plaintiff and his counsel asserted the Fifth Amendment defense at his deposition and also relies on the defense in responding to the Counterclaim, specifically responses to paragraphs 70, 85, 86, 90, 93, 94, 114-16, 119, and 120. (*See* Answer, ECF No. 127).  Jacob Transportation filed the instant motion based on Schemkes' failure to participate in discovery that is material to the case.  CLS joined in Jacob Transportation's motion.

## **DISCUSSION**

**A.**    **Legal Standard**

    Federal Rule of Civil Procedure Rule 37 allows a court to issue sanctions if a party fails to obey a court order regarding discovery. Fed. R. Civ. P. 37(b).  These sanctions include: striking pleadings in whole or in part; dismissing the action or proceeding in whole

or in part; or rendering a default judgment against the disobedient party. *Id.*

Rule 26 provides that the scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). "What is privileged is defined by the Federal Rules of Evidence; these rules include the privilege against self-incrimination." *Campbell v. Gerrans*, 592 F.2d 1054, 1057 (9th Cir. 1979); *See Hickman v. Taylor*, 329 U.S. 495, 507-508, 67 S.Ct. 385, 392 (1947). The Fifth Amendment protection of an individual's right against self-incrimination "applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it." *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 17 (1924). "The principle of Fifth Amendment protection has been construed to permit the privilege to be asserted 'in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory.'" *Campbell* at 1057 (*quoting Kastigar v. United States*, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656 (1972). As the *Campbell* court explains, lower courts have repeatedly held that the privilege against self-incrimination justified a person in refusing to respond to interrogatories. *See id.* However there is some authority that the imposition of sanctions, including dismissal of an action, is proper upon a Plaintiff who asserts the Fifth Amendment in a civil suit. *See id.*

For example, in *Lyons v. Johnson*, 415 F.2d 540 (9th Cir. 1969) the court dismissed plaintiff's case where plaintiff refused to participate in discovery by invoking the Fifth Amendment privilege against self incrimination. In explaining why a plaintiff cannot use the privilege as both a sword and shield, the court stated:

> Clearly, the process of discovery has become increasingly recognized as one of the primary and essential elements in making federal court business flow and in contributing to the accomplishing of trial justice or settlement termination of litigation. The scales of justice would hardly remain equal in these respects, if a party can assert a claim against another and then be able to block all discovery attempts against him by asserting a Fifth Amendment privilege to any interrogation whatsoever upon his claim. If any prejudice is to come from such

> a situation, it must, as a matter of basic fairness in the purposes
> and concepts on which the right of litigation rests, be to the party
> asserting the claim and not to the one who has been subjected to
> its assertion. It is the former who has made the election to create
> an imbalance in the pans of the scales.

*Id.* at 542.  The plaintiff in *Lyons* would not participate in any depositional interrogation or discovery whatsoever in relation to the claims. *Id.* at 541.  The trial court also explained to the plaintiff that her case would be dismissed if she continued to invoke shield of self-incrimination before it would dismiss her case. *Id.*  Once she continued in her protest, the trial court had no other choice but to dismiss the case.  The court of appeals upheld the trial court's dismissal. *Id.* at 542.

     The holding in *Lyons* was distinguished by *Campbell*, 592 F.2d 1054.  In *Campbell* the court of appeals found that the trial court's dismissal of the case for plaintiff's refusal to answer four interrogatories was an abuse of discretion.  The court also found that the four unanswered interrogatories were of a highly questionable nature and appear on their face to raise Fifth Amendment problems. *Id.* at 1057.  The court in that case explained that while discovery rules are to be accorded a broad and liberal treatment they do have their ultimate and necessary boundaries. *Id.*  One of those boundaries is the Fifth Amendment protection against self incrimination. *Id.*

**B.**    **Discussion**

     The instant suit presents a question that lies in between the facts of *Lyons* and *Campbell*.  During his deposition, Schemkes refused to answer any questions regarding commissions he earned, rides that he allegedly chose not to report, the amount of tips he made in cash as well as tips earned for taking passengers to gentlemen's clubs and nightclubs while employed for Defendants.  Jacob Transportation argues that Schemkes is using the Fifth Amendment privilege as a sword and a shield.  Jacob Transportation explains that Schemkes should not be allowed to file claims that he did not earn the minimum wage but

then refuse to answer questions regarding his 'full' compensation, which is essential to both Jacob Transportation's counterclaims and defense. Jacob Transportation argues that it is the same reasoning that precludes a litigant from claiming the privilege against self-incrimination on cross-examination after he has testified fully on direct examination. *See Brown v. United States*, 356 U.S. 148, 154 (1958). "[The litigant] has no right to set forth to the jury all the facts which tend in his favor without laying himself open to a cross-examination upon those facts."

Jacob Transportation argues that the true amount of commissions earned including tips is crucial to its defense. It explains that it has records for rides that were paid with credit cards but any rides that were paid in cash required the driver to report it as an honor system. An employee was required to report the commission and pay Jacob Transportation its share for any cash rides. Jacob Transportation alleges that Schemkes routinely took cash as payment and then failed to report these trips to his employers. Therefore, if Schemkes refuses to answer questions regarding what he actually made, then there is no way to calculate his wage properly. Jacob Transportation argues that Schemkes cannot claim that his commissions failed to equal the minimum wage and then refuse to answer questions as to whether he concealed the actual and true amount of his commissions. This would be using the Fifth Amendment as both a sword and a shield.

Jacob Transportation also argues that Schemkes' actual amount of tips earned is relevant to its defense regarding tip credit. An employer is allowed to pay an employee less than the mandated minimum wage if the employee makes more than $30 a month in tips and the amount of tips plus the employee's wage then equals the minimum hourly wage. 29 U.S.C. § 203(m), (t). Therefore, Jacob Transportation would need to know the actual amount of tips received in order to defend itself against Schemkes' charge that he was not paid the minimum wage. Jacob Transportation argues that because Schemkes will not

participate in discovery with regard to material facts needed to defend itself this case should be dismissed as was the action in *Lyons*.

Schemkes argues that he is entitled to invoke the Fifth Amendment privilege against self-incrimination because the Defendants have made repeated allegations that he, and other plaintiffs, did not report all of his fares and tips to his employers and the IRS.  The allegations amount to theft and failure to pay taxes, both serious crimes.  Schemkes argues that this case is more closely related to the *Campbell* case, where the plaintiff only refused to answer 4 out of 34 interrogatories and the court refused to dismiss that case.  Instead, Schemkes acknowledges that while his case is not subject to dismissal it is subject to a negative inference for lack of proof and that he may be precluded from rebutting Defendants' evidence on the issue.  *See e.g.*, *Campbell* 592 F.2d at 1058 (affirming that negative inference can be drawn from silence in civil cases).

Schemkes further argues that *Campbell* makes it clear that a court can only impose the Rule 37 sanction of dismissal if a party refuses to completely participate in discovery or does not obey a court order.  Schemkes has participated in discovery and there have not been any court orders to compel Schemkes to participate more fully in discovery.  The court agrees that dismissal would not be proper in this case without at least a warning to Schemkes that his continued invocation of the Fifth Amendment with regard to material issues would result in dismissal.

However, the Court is also cognizant of the distinguishing features of this case as compared to the *Campbell* case.  The four interrogatories that were allowed to go unanswered in *Campbell* were of a highly questionable nature that appeared on their face to raise Fifth Amendment problems.  *Campbell*, 592 F.2d at 1057.  Here, the actual amount Schemkes earned is very relevant to the minimum wage claims asserted against Jacob Transportation.  The parties cannot factually account for the amount the drivers were paid if

commissions on unreported rides were concealed. The same is true for any questions regarding tips. The questions are not so questionable on their face but instead go directly to the matter being litigated. Although these questions could lead to charges of theft and criminal withholding of taxes, the Fifth Amendment is not an invitation to mutilate the truth.

Nevertheless, the Ninth Circuit provides relatively broad Fifth Amendment protection. "Imposing the harshest of the Rule 37 sanctions on a proper exercise of Fifth Amendment rights is not in accord with Supreme Court decisions." *Campbell*, 592 F.2d at 1057. "[T]he privilege protects the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and that he is to suffer no penalty for his silence." *Id.* (*citing Spevack v. Klein*, 385 U.S. 511, 515, 87 S.Ct. 625, 628 (1967), which states: "In this context 'penalty' is not restricted to fine or imprisonment. It means, as we said in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229 (1965), the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly'.").

However tempting it is for this Court to grant Counterclaimant/Defendant's Motion, an automatic dismissal of the action would be a costly penalty not likely to survive the *Griffin* test. As explained in *Campbell*, dismissal is proper if a party acts in willful and deliberate disregard of court orders. Schemkes has not yet done that in this case. He has participated in discovery and exercised his right to invoke the protection of the Fifth Amendment only for questions he fears will result in criminal prosecution.

However, a district court still has discretion in its response to a party's invocation of the Fifth Amendment. *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008); *see Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1089 (5th Cir.1979) (If invocation of privilege prejudiced the other party, the district court "would be free to fashion whatever remedy is required to prevent unfairness."). Thus, if Schemkes insists on invoking the Fifth Amendment privilege to the material issues in this case, using the

privilege as not merely a shield but also a sword, the Court will allow an adverse inference at trial based on Plaintiff/Counterdefendant's silence and not allow Schemkes to rebut any evidence presented by Defendants/Counterclaimants on the subject. *See Campbell*, 592 F.2d at 1058; *Nationwide Life Ins. Co.*, 541 F.3d at 910. However, the adverse inference will not relieve Jacob Transportation of the burden to prove its claim; there must be some evidence, even if circumstantial, to support it as is more fully discussed below.

**C.     Summary Judgment**

Jacob Transportation further asserts that since Schemkes responded to the counterclaims by invoking the Fifth Amendment these allegations are deemed admitted. Rule 8(b)(1)(B) states: "In responding to a pleading, a party must admit or deny the allegations asserted against it by an opposing party." Rule 8(b)(2)-(5) lists the types of denials, or partial denials, that are permitted, including denials based on lack of information or knowledge. The list does not include denial based on the Fifth Amendment. Although not directly binding on this court, another district court in the Ninth Circuit has addressed the issue as to whether a party's invocation of the Fifth Amendment in response to a complaint should be deemed an admission. In *Industrial Indem. Co. v. Niebling*, the court held that "a court should not deem assertion of the Fifth Amendment privilege to be an admission of the allegations in the complaint." 844 F.Supp. 1374 (D.Ariz. 1994).

Likewise, many other cases suggest that as long as the privilege is properly raised, a court should not deem assertion of the Fifth Amendment privilege to be an admission of the allegations in a complaint. *See de Antonio v. Solomon*, 42 F.R.D. 320, 322 (D.Mass.1967); *North River Ins. Co., Inc. v. Stefanou*, 831 F.2d 484, 486 (4th Cir.1987); *National Acceptance Co. of America v. Bathalter*, 705 F.2d 924, 926 (7th Cir.1983); *Rogers v. Webster*, 776 F.2d 607, 611 (6th Cir.1985). Therefore, if the party invoking the privilege provides a foundation for the assertion of the privilege so that the district court can determine

1 whether the privilege may be invoked then it will not be deemed an admission. *See Industrial*
2 *Indem. Co.*, 844 F.Supp at 1377; *Rogers*, 776 at 611; *In re Morganroth*, 718 F.2d 161 (6th
3 Cir. 1983).

4     For example, in *Baker v. Limber*, the Ninth Circuit emphasized that a mere reference
5 to pending criminal proceedings is not sufficient. 647 F.2d 912, 917 (9th Cir. 1981). The
6 party asserting the privilege must demonstrate a "nexus" between the risk of criminal
7 conviction and the information requested. In *Baker*, although the defendant explained in a
8 motion that he had been convicted in state court, he did not describe the subject matter of the
9 state indictment and did not demonstrate its connection to the requested discovery. Further,
10 the risk of conviction was not evident from the implications of the questions and the
11 defendant supplied no basis for his belief that the answers would incriminate him. *Id*.

12     In this case, it appears that Schemkes asserted his Fifth Amendment privilege to
13 several claims set forth in Jacob Transportation's Counterclaim without providing a basis for
14 asserting the Fifth Amendment Privilege. (*See* Answer to Counterclaim, ECF No. 127).
15 However, later in response to Jacob Transportation's motion to dismiss, Schemkes does give
16 a reason for asserting the privilege. Schemkes explains that the reason he is invoking the
17 Fifth Amendment is to avoid criminal prosecution for improperly reporting his wages to the
18 IRS and any charges of theft arising from his alleged activities while employed by the
19 Defendants. Schemkes does not claim that there are any pending criminal charges against
20 him or even that charges are impending, only a mere possibility. However, Jacob
21 Transportation does assert a counterclaim against Schemkes and Greene for trespass to
22 chattels and conversion, charging that each provided rides to customers and kept the entire
23 fare for themselves instead of the 25% commission agreed upon in the employment contract.
24     Based on the foregoing the court finds that Schemkes has established a nexus between
25 this case and the danger of incrimination such that the court will not deem Schemkes'

answer's to Jacob Transportation's counterclaims admissions.  Admitting any sort of wrongdoing when reporting one's income to the IRS could subject the person to a cumbersome audit and in turn lead to criminal prosecution.  This fear of prosecution is a significant nexus to the current civil litigation regarding Schemkes' wages.  Therefore, the Court will not deem the answers admitted and will not order default judgment against Schemkes at this time.

## **CONCLUSION**

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss/Summary Judgment is DENIED.  However, if the Fifth Amendment invocation is continued, an adverse inference will be allowed at trial.

DATED this 18th day of February, 2011.

_____
Gloria M. Navarro
United States District Judge